# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PAUL L. BAKER,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:05-cv-1004-Orl-22DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of Defendant's decision to terminate Plaintiff's Social Security benefits. For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **AFFIRMED.**

### *PROCEDURAL HISTORY*

Plaintiff applied for a period of disability and disability benefits, and was found to be disabled as of February 19, 2001, by a determination dated June 5, 2001 (R. 41, 54-56). Subsequent to a continuing disability review, it was determined that Plaintiff's disability ceased on October 1, 2003 (R. 14, 39). Plaintiff requested and received an administrative hearing before an administrative law judge (herein "the ALJ"), and the ALJ issued an unfavorable decision on February 5, 2005, finding that Plaintiff no longer met the statutory requirements for disability (R. 11-19A). Plaintiff sought Appeals Council review, which was denied on May 5, 2005, making the ALJ's decision the final decision of the Commissioner. This action timely followed, and the matter is now ripe for review.

### *NATURE OF CLAIMED DISABILITY*

As determined by the initial finding of disability, Plaintiff suffered from a severe arthritic hip condition that resulted in a residual functional capacity ("RFC") for less than the full range of sedentary work (R. 14). Following that determination and the award of benefits, Plaintiff underwent surgical replacement of both hips (R. 204-217). Plaintiff asserts that he is still disabled, due to continued (although milder) pain and limitations in his hips; back pain due to degenerative disc disease; and neck and shoulder pain (R. 83-90, 118, and 132). Plaintiff was 55 years old at the time of the ALJ's hearing decision, with a twelfth grade education (R. 54, 66), and past work experience as a grocery/retail store stockman, and process server (R. 61, 72-74). In the determination at issue the ALJ found that, following the successful hip replacements, Plaintiff regained the residual functional capacity to perform light work, including Plaintiff's past relevant work as a process server, and was therefore no longer disabled (R. 19-19A).

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

After an individual is awarded disability benefits by the Social Security Administration, those benefits will cease upon a showing that there has been medical improvement related to the ability to work. 42 U.S.C. §423(f); *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982).[1]

> [O]nce the claimant has introduced evidence that his or her condition remains essentially the same as it was at the time of the earlier determination, the claimant is entitled to the benefit of a presumption that his or her condition remains disabling . . . . The presumption of a continuing disability does not affect the ultimate burden of proof. It imposes on the [SSA] only the burden of going forward with evidence to rebut or meet the presumption.
>
> . . . .
>
> Once the burden to come forward has shifted to the [SSA], the [SSA] must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity.

*Daring v. Heckler*, 727 F.2d 64, 68-69 (3d Cir. 1984) (quoting *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983)).

---

[1] The portion of this opinion dealing with evaluation of a claimant's reports of pain has been superseded by amendments to the Act.

Comparison of original medical evidence and new medical evidence is necessary to make a finding of improvement. *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984). The point of comparison is the most recent favorable medical decision, that is, the latest final decision involving consideration of the medical evidence and the issue of whether claimant was disabled or continued to be disabled. 20 C.F.R. §404.1594(b)(7).

Medical improvement is assessed by review of "symptoms, signs and/or laboratory findings." 20 C.F.R. §404.1594(b)(1). Symptoms are the claimant's description of impairments. 20 C.F.R. §404.1528. Signs are observable by medically acceptable clinical diagnostic techniques. *Id.* Laboratory findings are from medically acceptable laboratory techniques. *Id.*

As pointed out by the ALJ, the steps to be followed in evaluating whether a disability continues are:

1. Is the individual engaging in substantial gainful activity?

2. Does the individual have an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1?

3. Has there been medical improvement and, if so, is it related to the ability to work?

4. Do any of the exceptions to the medical improvement standard apply?

5. Does the individual have a severe impairment or combination of impairments?

6. Can the individual do his past relevant work?

7. Can the individual do any other work?

20 C.F.R. § 404.1594(f).

Here, the ALJ found that Plaintiff was not engaged in substantial gainful activity (step one); did not have an impairment that met or equaled the Listings (step two); there had been medical

improvement and it related to the ability to do work (step three); none of the exceptions to the medical improvement standard applied (step four); Plaintiff had the severe impairment of degenerative disc disease, osteoarthrosis, shoulder problems, and chronic pain (step five); but was nevertheless able to perform his past relevant work as a process server (step six). Because the decision was made at step six, the ALJ did not proceed to the seventh step of the evaluation.

Plaintiff, appearing here and below *pro se*, asserts in his papers a contention that is construed by the Court as an assertion that the Commissioner's decision is not supported by substantial evidence. Specifically, Plaintiff does not appear to challenge the ALJ's finding that there has been medical improvement in his condition following the hip replacements, but he asserts that: 1) his primary gainful employment has been physical labor and his work as a process server, self-employed, "has provided only a fraction of his income at any point in his work life" and 2) although he has "diligently attempted to reinvigorate his process serving career," the number of competitors in his county is such that "he can never realistically earn enough money in his profession to be characterized as gainfully employed;" and 3) his physical ailments, as well as his age and lack of skills, prevent him from doing other "light" work "that can provide him meaningful or substantial income." (Doc. No. 14). Thus, it appears that Plaintiff takes issue with the finding that he can perform his past relevant work, in that Plaintiff asserts that his past relevant work is not substantial gainful activity. While not unsympathetic to Plaintiff's situation, the Court finds that the Commissioner's findings are supported by substantial evidence, and thus, must be affirmed.

The medical evidence of record indicates that Plaintiff underwent bilateral hip replacement surgery in October 2001 and January 2002, and Plaintiff has sought limited medical treatment since

that time (R. 153-57, 160-63, 178-79; 201-16, 226, 228-31).  Plaintiff reported that he has not sought medical attention because he was not on his wife's insurance, as it was too expensive (R. 191; 115).

In March 2002, Dr. Hany Helmy, Plaintiff's treating physician, noted that Plaintiff was doing well following the surgery, with full range of motion (R. 207).  Dr. Helmy found good range of motion in the hips and excellent fixation on a July 19, 2002 return visit, and it was noted that Plaintiff had "absolutely no problems." (R. 205).

From May through December 2002, Plaintiff was treated for chronic glaucoma in both eyes (R. 178-87).  He underwent bilateral laser iridotomy with some improvement noted; visual acuity was 20/20 with corrective lenses(R. 178-79).

On September 9, 2003, Plaintiff was examined by Dr. Joseph Mignogna, apparently a consultative examiner (R.190-94).  Dr. Mignogna reported that Plaintiff had full range of motion of the cervical and lumbar spine, shoulders, elbows, wrists, knees, and ankles, except for 15 degrees or less loss of motion in hips (R. 193).  Plaintiff exhibited normal muscle strength, normal stance and posture, normal sensation, and negative straight leg raises (R. 192-93).  X-rays revealed osteopenia and disc disease at T12-L1 with diffuse spurring (R. 193-94). Dr. Mignogna placed no physical restrictions on Plaintiff and noted that there were no functional limitations.

On September 30, 2003, a non-examining state agency physician completed a physical residual functional capacity assessment (R. 195-200).  The physician concluded that Plaintiff could occasionally lift and carry up to 20 pounds, and could sit or stand/walk up to 6 hours a day (R. 196). It was also noted that Plaintiff had no postural, manipulative, or environmental limitations (R. 196-98).

In October 2003, Plaintiff presented to Dr. Helmy's associate for complaints of cervical ache radiating into the shoulders, and diffuse lumbar pain (R. 202-05). On examination, Plaintiff had cervical and paraspinal pain, with loss of 10% active range of motion. Minimal impingement was noted in the shoulders, but strength and active range of motion was full. Plaintiff exhibited stiffness in the spine and some tenderness and reported being pain-free with respect to his hips (R. 204). His knees were asymptomatic, straight leg raising was negative, and he could toe walk, toe walk with knees bent and heel walk (R. 203). X-rays were taken, and showed advanced cervical spondylosis facet arthrosis at C3-C4, C4-C5, and increased to severe at C5-C6, including degenerative disc disease to C6-C7. Lumbar x-rays revealed advanced lumbar spondylosis, facet arthrosis, with degenerative disc disease (R. 203). He was diagnosed with advanced cervical spondylosis, facet arthrosis, degenerative disc disease, possible radiculopathy, and bilateral impingement syndrome of the shoulders (R. 203), and advanced lumbar spondylosis deformans, degenerative disc disease, spondylosis changes and facet arthrosis changes (R. 203). Medication was prescribed, and an MRI was ordered.

On October 27, 2003, an MRI of the cervical spine revealed degenerative disc disease of C4-C6 with significant spurring and entrapment neuropathy of the C5 and C6 roots (R. 217). Dr. Helmy noted that Plaintiff had limitation of motion of the neck, and some paresthesia of the C4-C6 dermatomes (R. 201). Dr. Helmy recommended physical therapy, cervical traction and "rehab." Bextra was given, and Plaintiff was to return in two months.

On February 4, 2004, another non-examining state agency physician completed an "advisory" physical residual functional capacity assessment and opined that Plaintiff had experienced medical improvement (R. 218-25). The physician concluded that Plaintiff could occasionally lift and carry

up to 20 pounds, frequently 10, and could sit or stand/walk up to 6 hours a day (R. 196). Plaintiff could frequently climb ramps or stairs, but could never climb ladders, ropes, or scaffolds; could frequently kneel and crawl, and could occasionally balance, stoop, and crouch, but should avoid concentrated exposure to hazards (R. 220,222).

On July 28, 2004, Paul Lombardi, a chiropractor, stated in a letter that Plaintiff had undergone chiropractic treatment for back and neck pain, with good results (R. 226-27).

In December 2004, Plaintiff underwent repair of a right lateral malleolus fracture after falling at his pool (R. 229-31).

Plaintiff appeared at his hearing and testified regarding his pain and limitations. Plaintiff also submitted several reports regarding his condition and activities, which are in the administrative record. Plaintiff noted at his hearing that he was attempting to re-invigorate his process serving business "with not a lot of success so far." (R. 244-45). He stated that he drives a car (R. 248), cooks meals and shops (R. 249), swims and exercises as was taught in his rehab (R. 250), and does housework (laundry, vacuuming, emptying the dishwasher) (R. 251). He mows the lawn on occasion (R. 251), and attends some of his children's school performances. Plaintiff testified that he is able to reach, bend and kneel if he is holding on to something, and could lift 10-20 pounds.

In view of the foregoing, the ALJ's finding that Plaintiff's condition had medically improved and that improvement is related to Plaintiff's ability to work is supported by substantial evidence. Comparing the original medical evidence with the new medical evidence shows that the replacement of both hips improved Plaintiff's condition and functional ability considerably, as acknowledged by Plaintiff himself. Having established improvement, the ALJ determined that Plaintiff had the current residual functional capacity for light work (lifting and carrying 20 pounds occasionally, and 10

pounds frequently; sitting and standing/ walking up to 6 hours each during an 8 hour day; the ability to push and/ or pull; a frequent ability to climb, kneel, and crawl; and an occasional ability to balance, stoop, and crouch).  This, too, is supported by substantial evidence in that it is consistent with the consultative examination, the state agency non-examining opinions, Plaintiff's self-described level of activities and is not inconsistent with the treating physician's notes or findings.

Having established that Plaintiff is able to perform light work, the ALJ next determined that Plaintiff's past relevant work as process server was within this RFC.  This, too, is adequately supported.  Plaintiff described the work in testimony (R. 258) and in his filings as being well within this capacity.  (*See* R. 74 -- the job required frequently lifting less than 10 pounds, walking 2-3 hours out of the day, standing 2-3 hours, sitting 3-4 hours, with occasionally climbing stairs).  It appears that Plaintiff does not contest his physical ability to perform the work, but rather asserts that the work itself is not substantial gainful activity in that competition and his lack of clients render the job unprofitable.   As set forth in his papers, Plaintiff was a process server from April 1987 to April 1994, and again from September 1996 to February 2000 (R. 72).  According to his record of earnings for the operative years (1988 to 1993 and 1997 to 1999),[2] Plaintiff earned over $6000.00 annually from 1988 through 1993, but earned only $5718.01 in 1997; $447.00 in 1998; and no money at all in 1999 (R. 58).  According to the Regulations, there is a presumption of substantial gainful activity if a claimant's monthly earnings averaged more than $300 a month in calendar years 1980-1989; $500 a month in calendar years January 1990 - June 1999; and $700 a month for July 1999-December 2000.

---

[2]Because the record of earnings is annual, it cannot be ascertained from the yearly total which earnings are from process serving and which are from working in the grocery store for those years in which Plaintiff did both.  Thus, the Court looks only to the years in which Plaintiff reported that he was working solely as a process server in order to ascertain whether the work was substantial gainful activity.

20 C.F.R. § 404.1574 (Table 1); § 404.1575 Evaluation Guides if you are Self-employed. *See, generally, Johnson v. Sullivan,* 929 F. 2d 596 (11th Cir. 1991). Applied here, Plaintiff's work as a process server was substantial gainful activity under this test from 1988 through 1993.

The definition of "past relevant work" is work activity of a substantial gainful nature performed within fifteen years preceding adjudication for a period long enough to learn the job (20 C.F.R. Section 404.945). Thus, Plaintiff's work as a process server after February 5, 1990 (as the decision was rendered February 5, 2005) was substantial gainful activity and thus, past relevant work.

The income test is not always applicable for evaluation of self-employed individuals. *Johnson, supra.* The Commissioner is entitled to consider the nature of the activities performed. *Id.* Here, Plaintiff does not suggest that he is physically unable to work as a process server, but rather that he cannot make a reasonable living from process serving due to competition. This contention is unavailing. Plaintiff must show that he is not able to return to his occupation, not a specific prior job in particular. *See Jackson v. Bowen*, 801 F.2d 1291, 1293-4 (11th Cir. 1986) (holding that a claimant must demonstrate an inability to return to the previous type of work he was engaged in). As explained by the Fifth Circuit Court:

> Congress might well have defined disability in broad terms under the Social Security Act and related it to unemployment by qualifying 'any substantial gainful activity' with the words 'available in the claimant's immediate working area' or similar words. That is not the statutory test; the Act is not an unemployment compensation law. Here, as in *Hick*s: 'The hardship here seems to lie more in Hicks's inability to find employment than in his incapacity to work. Despite our natural sympathy for Hicks's plight, we cannot order unemployment compensation under the guise of disability insurance.'
> The explicit congressional command is that the impairment must cause 'inability to engage in any substantial gainful activity'. *See Gotshaw v. Ribicoff*, 4 Cir. 1962, 307 F.2d 840, 844; *Pearman v. Ribicoff,* 4 Cir. 1962, 307 F.2d 573, 574; and *Adams v. Flemming*, 2 Cir. 1960, 276 F.2d 901. In this case, as in all of these disability cases under the Act, the plaintiff asks the inevitable rhetorical question: What jobs are there?

> For the Secretary, 'What jobs are there' means, within the context of the Act, what kinds of work can the claimant perform, not what jobs are there available for him in Kosciusko, Mississippi. *See Kerner v. Fleming,* 2 Cir. 1962, 283 F.2d 916; *Graham v. Ribicoff*, 9 Cir. 1962, 295 F.2d 391; *Rinaldi v. Ribicoff*, 2 Cir. 1963, 305 F.2d 548. In the light of this correct understanding of the law, the Secretary's showing of O'Brient's ability to perform light work of a various nature is all the answer he is required to make to the claimant.

*Celebrezze v. O'Brient*, 323 F.2d 989, 992 (5th Cir. 1963).

The decision of the Commissioner is supported by substantial evidence and was made in accordance with proper legal standards. As such, under the deference accorded such decisions, it must be affirmed.[3]

### *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be **AFFIRMED** and judgment be entered accordingly.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 19, 2006.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

[3] The Court notes that Plaintiff suffers from a degenerative disease that is progressive in nature. As such, nothing herein should be interpreted as discouraging him from applying for a new period of disability, if warranted, in the future.